No. 82
STATE v. MABEL CHAMPION
Ohio Supreme Court
No. 18029. Decided Jan. 15, 1923
To Appear in —— OS. Reports

For complete Syllabus of this case see 2 Abs , No. 4, page 68, ante Jan. 23

480. EVIDENCE—Defense in a prosecution for homicide has no right to claim self-defense as justification where she entirely failed to testify as to her bona fide belief that she was in danger of death or great bodily harm, and that her only means of escape was to use the force she did.

1077. SELF DEFENSE—Testimony of accused, in a homicide case, that she did not intend to shoot the deceased or do him bodily harm, inconsistent with a plea of self defense.

225. CHARGE TO JURY—Defense of assault and battery in a trial for homicide inconsistent with a plea of self defense, and court may refuse to charge as to it.

482. EXCEPTIONS—Where counsel fails to except to refusal of court to give special requests asked for by such counsel it indicates his satisfaction with the general charge on the subject.

1195. TRIALS—Failure to call witnesses known to have been present at a homicide may properly be commented upon by counsel on the other side, in address to jury.

WANAMAKER, J.

Epitomized Opinion
First Publication of this Opinion

Mabel Champion was indicted by the grand jury of Cuyahoga county, on a charge of murder in the first degree, and on the trial in the Common Pleas was found guilty of manslaughter. Motion for a new trial was filed, and overruled, judgment entered and sentence pronounced. Error was presented to the Court of Appeals, which reversed the judgment and remanded the case for a new trial. This case prosecutes error to the Supreme Court to reverse the judgment of the Court of Appeals.

The journal entry of the Court of Appeals shows that "judgment of the said Court of Common Pleas is reversed, for error in the court not charging self defense, for error in not properly charging the jury on accidental shooting and for error in the admission of evidence."

The essential prerequisites to invoking the right of self defense have been clearly set forth by the courts of Ohio. The parent case, often approved and reapproved, is Martz v. State, 26 OS. 162. These are: (1) Defendant must "bona fide believe that she is in imminent dagner of death or great bodily harm"; (2) that "her only means of escape from such danger" will be the taking of the life of her assailant; (3) that the defendant must have "reasonable grounds" for such belief. These prerequisites require specific testimony from the defendant herself as to her belief in the premises, as no one else could testify to her belief.

1. Nowhere in the defendant's evidence does she testify that she so believed either of the said propositions. Upon the contrary the record shows that she testified that she did not intend to shoot the deceased nor do him harm.

2. The record shows that at the close of the general charge to the jury, the counsel for the accused made special requests for charges

(Continued on Page 94)

# CURRENT OHIO COURT of APPEALS CASES
## Weekly Advance Abstract Opinions

No. 68
WELSH v. GUARINO
Ohio Appeals, 8th Dist., Cuyahoga County
No. 4715.   December 24, 1923

27. ACTION OR SUIT—Unless a failure to comply with GC. 11231 as to commencement of action appears conclusively on the face of the petition a demurrer will not be sustained.

Attornys—S. V. McMahon and F. W. Zimmerman, for defendant; Niman, Grossman, Buss & Holiday, for plaintiff.

---

No. 69
IMPORTERS & EXPORTERS INSURANCE CO. v. ROSS et al
Ohio Appeals, 9th Dist., Summit County
No. 610.   Decided Feb. 3, 1923

85. APPEALS—The determination of preliminary matters, such as reformation of contract, where that question is incidental to the main issue is not a final order.

1012. REFORMATION OF WRITTEN INSTRUMENTS—While evidence to reform insurance policy to cover chattel mortgaged property must be clear and convincing—estoppel is more effective when agent has knowledge of facts.

647. INSURANCE—Notice of loss to "authorized agent" issuing policy and his acceptance thereof deemed waiver of proof.

683. JURY—The question of misrepresentation was a question of fact for the jury.

PARDEE, J.
Epitomized Opinion
First Publication of this Opinion

Ross purchased a Revere automobile from the Akron Jordon Motor Sales Co., the possession of which was given to him about September 23, 1920.   The purchase price was $4,995, and in part payment Ross traded in a used car at a consideration of $2,500.  At delivery Ross gave the Sales Co. two mortgages on said car, one for $2,584 and one for $500, both of which were duly recorded.   On Oct. 27, 1920, Ross insured the car against fire and theft with Cummins & Son, agents for the defendant Insurance Co.  The car was stolen Dec. 8, 1920.  Ross immediately notified the police department and also gave the Company written notice of the theft.  As the Company refused to pay for the loss of the car, he filed an action against it, setting up two counts, one for reformation of the insurance contract and the other for damages for breach of agreement.  The court heard evidence on the first cause of action and reformed the policy so that it indicated that there was an outstanding chattel mortgage.  This order was made Dec. 6, 1921. The case was then tried to the jury, which found for the plaintiff.  The verdict was returned on Jan. 18, 1922, and a motion for a new trial filed on Jan. 21, 1922.  The Insurance Co. then prosecuted error.  Among the various contentions made before the reviewing court was a contention of plaintiff that the bill of exceptions had not been filed in time. In sustaining the judgment of the lower court, the Court of Appeals held:

1. The determination of the question of reformation was only a preliminary hearing preceding the determination of the main issue in the case, like the determination of other incidental or preliminary questions which might arise in a civil action, and the decision of the court upon this question does not amount to a final judgment, nor does it form the basis for a proceeding in error.  Consequently the period of time for filing a bill of exceptions begins to run from the date of final judgment and not from the time the court passed on the question of reformation of the contract.

2. While the evidence must be clear and convincing in order for the court to reform a written instrument, yet it cannot be said that the finding of the trial court was manifestly against the weight of evidence in this issue.

Estoppel may be as effective as reformation in like cases. Foster v. Insurance Co., 101 OS. 180.

3. It cannot be said that the finding of the jury that the defendant was given notice of the loss and that it waived proof or loss as required by the policy were manifestly against the weight of the evidence.

4. Whether the plaintiff concealed or misrepresented any material fact concerning the automobile or existing indebtedness thereon, and the question of whether the agent knew these facts at the time the policy was taken, were questions for the jury, and as the jury resolved these questions in favor of the plaintiff, it cannot be said that the jury was unwarranted in so finding upon the evidence before them, substantial compliance and performance of insurance contract whether conditions are precedent or subsequent, is all that is required of assured. 104 OS. 427.

Attorneys—Nelan & Walsh and R. H. Davis, for Insurance Co.; Musser, Kimber & Huffman and Commins, Brouse, Englebeck & McDowell, for Ross et al.

No. 70

FETTERMAN v. CLEVELAND HEIGHTS BOARD OF EDUCATION

Ohio Appeals, 8th Dist., Cuyahoga County
No. 5030. Decided Oct. 29, 1923

85. APPEALS—Injunction case is appealable.

1065. SCHOOLS—Establishment and publication of educational survey held necessary and proper.

SULLIVAN, J.

Epitomized Opinion

First Publication of this Opinion

This was an action to restrain the Board of Education of Cleveland Heights from spending $1,100 based upon a contract entered into between a publisher and the Board of Education by which a survey of the school system was to be published to the electorate and all concerned in said school district. The plaintiff, a tax-payer, asked that the Board of Education be restrained from expending this money, claiming that the Board had no authority so to do. The survey had been duly authorized by said Board according to law. The lower court found for the plaintiff, and issued a permanent injunction. The defendant appealed the case. In entering a finding for the defendant, the Court of Appeals held:

1. An action for injunction and equitable relief is a chancery case under Art. 4, Sec. 6, of the constitution, and it is therefore appealable.

2. Publication of the survey was a "necessary provision" under GC. 7620 for the convenience and prosperity of the schools within the district, as the evidence disclosed that it was issued with a view to improving the school system, and as the evidence also showed that some sort of comparison with other school systems should constantly be made in order to advance its own educational system. Clark v. Cook, 103 OS. 465, distinguished; State v. Franizer, 77 OS. 7, followed.

Attorneys — A. Frank Counts, for Fetterman; Kerruish, Kerruish, Hartshorn & Spooner, for Board of Education.

No. 71

STEIN v. FRIES

Ohio Appeals, 8th Dist., Cuyahoga County
No. 4719. Decided Dec. 24, 1923

182. BROKERS—Agent, employed to procure purchaser for remainder of sub-lease, interesting buyer to purchase permanent lease, to whom sub-lessor later sold his interest, is entitled to commission though purchase price was less than originally stated.

VICKERY, P. J.

Epitomized Opinion

First Publication of this Opinion

This was an action to recover a real estate commission. It appeared that Stein was to find a purchaser of a certain leasehold property owned by Fries on Huron road in the city of Cleveland. It also appeared that one Boehmke had a 99-year lease on the property and that Fries was a subtenant of a portion of said property. Stein was to find a purchaser of this sublease at 45 cents per square foot. Stein interested one Klein in the property, who afterwards purchased the 99-year lease direct, and later purchased from Fries his sublease at 27 cents per square foot. When Stein learned of the transaction he presented a claim for his commission. In holding that Stein was entitled to his commission, the Court of Appeals held:

1. As the agent was employed to procure a purchaser for the remainder of this lease and through the efforts of this agent the matter was brought to the attention of Klein, who subsequently purchased the property, the owner, Fries, reaped the benefit of the agent and was liable for the commission, although the purchase price was less than the amount contained in the original contract.

Attorneys—Bulkley, Hauxhurst, Jamison & Sharp, for Stein; Clum & Marty, for Fries.

## STATE COURT OF APPEALS—Continued

### No. 72
### LAZZARA et al v. GLAZER et al

Ohio Appeals, 8th Dist., Cuyahoga County
No. 4629.   Decided Nov. 12, 1923

182.  BROKERS—Commission to sell real estate interest for stipulated sum and commission held not agreement "to find a purchaser."

MAUCK, J.

#### Epitomized Opinion
First Publication of this Opinion

This was an action for a real estate commission.  The plaintiffs' petition set forth that the defendants engaged them to **find a purchaser** of certain real estate.  The record indicated that the plaintiffs never offered any testimony that they were merely to "find a purchaser."  M. Lazzara testified that the defendants' proposition was:

"I will give you $500 on this property if you will be able to sell it for $15,500, so that $15,000 will remain."

The case was tried in the Municipal Court of Cleveland, where a judgment was rendered for the defendants.  Plaintiffs prosecuted error.  In sustaining the judgment of the lower court, the Court of Appeals held:

1. As the plaintiffs pleaded an employment whereby they were to "find a purchaser" for the property in question which was not substantiated by the evidence, no error was committed in rendering a judgment for the defendants.  (Pfanz v. Hamburg, 82 OS. 1, followed; Carey v. Conn, 107 OS. 133, dist.)

Attorneys—Nuccio & Romano, for Lazzara; Wm. H Thomas, for Glazer.

### No. 73
### GEOMETRIC STAMPING CO. v. GABRIEL MANUFACTURING CO.

Ohio Appeals, 8th Dist., Cuyahoga County
No. 4550.  Decided Oct. 1, 1923

297.  CONTRACTS—Agreement to do what promisor was legally bound to do is without consideration.  Damages—Measure of damages for sale of stipulated number of goods with alternative of purchasing deficiency in open market is difference between market price and contract price, thereof.

VICKERY, P. J.

#### Epitomized Opinion
First Publication of this Opinion

This action is an action against the Geometric Stamping Company to recover damages for a breach of contract.  In July, 1919, the Geometric Company entered into a contract with the Gabriel Mfg. Co. to furnish the latter with 500,000 snubbers to be used on certain kind of an automobile.  In addition to providing the time at which performance was to begin, the contract provided that if the Geometric Company failed to deliver the required number for any one month, the Gabriel Mfg. Co. could buy the snubbers elsewhere and charge the Geometric Co. with the difference in the purchase price.  Only about 64,000 snubbers were delivered under the contract.  The Geometric Co. admitted a breach of the agreement, but claimed that there was a settlement in which the Geometric Co. was to manufacture 4,000 of a larger size snubbers, which were later delivered.  The trial resulted in a verdict for plaintiff for $11,000.  The defendant prosecuted error.  In sustaining the judgment of the lower court, the Court of Appeals held:

1. Aside from the questionability of a settlement, even if there were, it is doubtful if there was a valid consideration in that the Geometric Stamping Co. agreed to do only what it was legally obliged to do.

2. The 150,000 snubbers which the Gabriel Co. was compelled to buy on the market was not an additional amount that it bought, but an amount which it bought by virtue of the provision in the contract that it might purchase elsewhere and charge the difference to the Geometric Company, and therefore it could charge the difference in price to the defendant.

Attorneys—Calfee, Fogg & White, for the Geometric Stamping Co.; I. Grohs, for Gabriel Mfg. Co.

### No. 74
### CRUM v. CRUM

Ohio Appeals, 7th Dist., Mahoning County
Decided Oct. 5, 1923

413.  DIVORCE AND ALIMONY—Decree of alimony for $100 granted wife divorced for wilful absence, it appearing that she took $500 in household goods and otherwise received $900 out of $2,700 of marriage accumulations, will not be reversed.

ROBERTS, J.

#### Epitomized Opinion
First Publication of this Opinion

This was an action for alimony commenced by Clara Crum against Charles Crum.  At the original hearing the wife was granted permanent alimony.  A reconciliation then took place which lasted for one month.  The wife then brought action against the husband for divorce, alleging habitual drunkenness, wilful absence, extreme cruelty and gross neglect of duty.  The husband filed an answer and cross-

petition alleging that his wife was guilty of wilful absence, gross neglect of duty, and adultery.

Shortly previous to the commencement of the divorce action a motion was filed by the wife in the original alimony case, by which she sought to compel the payment of the alimony awarded her by the court. The court found that as the parties had resumed their marital relations she was not entitled to the allowance of alimony. Upon the final hearing the court granted the divorce to the husband for wilful absence of the wife and gave her $100 as permanent alimony. The evidence also disclosed that considerable property had been accumulated during the marital relation, out of which the wife received $900, and that the wife left, taking with her about $500 worth of household goods. Error was prosecuted by the wife. In sustaining the judgment of the lower court, the Court of Appeals held:

1. The decision of the lower court was not manifestly against the weight of evidence.

Attorneys—Morgan & Maiden, for plaintiff in error; J. B. Morgan, for defendant in error.

---

### No. 75

### DE PAOLO v. STATE
### DE LORETO v. STATE

Ohio Appeals, 7th Dist., Trumbull County
Decided September 28, 1923

661. INTOXICATING LIQUORS — Evidence held to warrant a conviction of selling.

FARR, J.

#### Epitomized Opinion

First Publication of this Opinion

Before the Police Court of the City of Warren, De Paolo was charged with keeping a place where intoxicating liquors were sold, and De Loreto, his clerk, was charged with selling intoxicating liquors. One Porter was, by officers, found intoxicated and on his person were seven bottles of Jamaica ginger, which on analysis was found to contain more than the prescribed legal amount of alcoholic content. He was sent by the officers to the store of De Paolo, where he purchased from De Loreto more Jamaica ginger.

Porter testified that he had been to the store four times during the day and had purchased Jamaica ginger each time.

His wife testified that she had been to the store earlier in the day and requested defendants not to sell Porter more ginger. The testimony of the defense was that only one bottle of Jamaica ginger had been sold to Porter and

that that was for medicinal purposes. Both defendants were convicted and each prosecuted error, contending that the trial court should have directed a verdict in his favor at the close of the State's evidence. Held:

It can scarcely be believed that defendants were conducting memerly a homeopathic pharmacy. In view of the testimony the judgment will notbe disturbed. Judgment affirmed.

Attorneys—L. L. Guarnieri, Warren, for defendants; M. D. Lea, City Sol., Warren, for State.

---

### No. 76

### BAILEY et al v. GEISINGER

Ohio Appeals, 9th Dist., Summit County
No. 713. Decided Oct. 15, 1923

480. EVIDENCE—Parol evidence admissible where it appears that writing contained only part of agreement—Where written agreement is based upon a condition precedent, parol evidence was admissible to show that the condition never transpired.

PER CURIAM.

#### Epitomized Opinion

First Publication of this Opinion

Geisinger brought an action to recover back $5,000 paid on the purchase price of certain real estate. The evidence disclosed that Geisinger entered into a written contract with Baileys to purchase certain real estate for a certain consideration, $5,000 of which was paid at the time of the execution of the contract. Geisinger claimed that both parties knew at the time of the execution of entering into the contract that there was a question as to whether or not a portion of the building on the property extended on to the adjoining property.

He claimed that the Baileys agreed that the true line should be ascertained by them and that if the building did extend on to the adjoining property that they would remove it by a certain time or the sale would be void. The written contract said nothing about any such agreement, and as judgment was rendered for plaintiff, the defendants claimed that the admission of evidence as to this oral agreement vitiated the rule that when parties have reduced their agreement to writing the same cannot be contradicted, altered, added to or varied by parol and extrinsic evidence. In sustaining the judgment of the lower court, the Court of Appeals held:

1. Where it is made to appear by proper and competent means, as in the instant case, that the writing contains only part of the agreement entered into, parol evidence is competent

## STATE COURT OF APPEALS—Continued

to show what the parties really did agree to with reference to the subject matter of the contract; consequently no error was committed in admitting parol evidence.

2. As the plaintiffs' petition set forth facts which justified the trial court in assuming that the contract as executed and delivered was done so by plaintiffs upon a condition precedent or that the contract was not to become binding until the happening of a future event, parol evidence is admissible to show that that event or condition had not occurred.

Attorneys—Musser, Kimber & Huffman, for Bailey et al; Owen M. Roderick and Anderson, Ormsby & Kennedy, for Geisinger, all of Akron.

---

### No. 77

YOUNGSTOWN MUNI. RY. v. TOTH

Ohio Appeals, 7th Dist., Mahoning County
November 9, 1923

480. EVIDENCE—Judgment reversed as being against weight of evidence.

FARR, J.
Epitomized Opinion
First Publication of this Opinion

Toth was injured in getting off one of defendant's street cars. He testified that, while he wa sstanding on the step of the car inside the door it was suddenly opened as the car was approaching a stop, and a sudden jerk of the car threw him out into the street. The conductor and a passenger on the car testified that just before the car came to a stop the conductor released the door, allowing it to slide open about four inches and that Toth, who appeared nervous and anxious to get out, grasped the door, forced it open and stepped out. In a statement signed by Toth shortly after the accident he stated that he stepped out unaware that the car was still in motion. Verdict and judgment being rendered for plaintiff, defendant prosecuted error. Held:

The judgment is clearly against the weight of the evidence. Reversed and remanded.

Attorneys—Kennedy, Manchester, Conroy & Ford, for Railway; Clyde E. Osborne, for Toth, all of Youngstown.

---

### No. 78

CLEVE. & EASTERN TRAC. CO v. OBERTON

Ohio Appeals, 8th Dist., Cuyahoga County
No. 4695. Decided Dec. 24, 1923

829. NEGLIGENCE—Driver of motor truck, injured by running into and striking rapidly approaching interurban car at street crossing, is guilty of contributory negligence for failure to stop, look and listen.

SULLIVAN, J.
Epitomized Opinion
First Publication of this Opinion

The plaintiff brought an action for injuries to person and damage to property as a result of a collision between his motor truck and a traction car at a grade crossing. The evidence disclosed that the plaintiff listened before reaching the crossing, but that he did not stop or look. The evidence also disclosed that the plaintiff was familiar with the conditions surrounding the crossing and that he saw the interurban car coming, but could not stop his truck in time to avoid running into and striking the side of the car. At the close of the plaintiff's evidence the defendant made a motion for a directed verdict, which was overruled. As a verdict was returned for the plaintiff, defendant prosecuted error. In reversing the judgment of the lower court, the Court of Appeals held:

1. As the plaintiff did not stop, look and listen for an approaching interurban car, he did not exercise the duty enjoined upon him by law, and was guilty of contributory negligence as a matter of law in failing to do so; therefore, the lower court erred in refusing to direct a verdict. Ohio Elec. Ry. v. Weingertner, 93 OS. 125; 112 NE. 203, distinguished.

Attorneys—Snyder, Henry, Thomsen, Ford & Seagrave, for Traction Co.; Griswold, Green, Palmer & Hadden, for Oberton.

---

### No. 79

SCHWARTZ et al v. CARLISLE TOWNSHIP BOARD OF EDUCATION

Ohio Appeals, 9th Dist., Lorain County
No. 268. Decided Oct. 23, 1923

866. OFFICERS—Under GC. 154-1 to 154-8 the Director of the Industrial Relations Department is vested with certain powers and duties—The Director has full control over Factory Inspector.

1065—SCHOOLS—School boards are not authorized to abandon school buildings or to sell bonds to erect new structures under GC. 7630-1 without election, by letter from factory inspector without seal of department prohibiting use of old building.

WASHBURN, J.
Epitomized Opinion
First Publication of this Opinion

This was an action by Schwartz and others to enjoin the issue and sale of $120,000 of bonds of Carlisle Township Rural School District on the part of the Board of Education. There were eight schools in the school district

in question instead of one centralized school. The bonds in question were issued for the purpose of providing the funds for the erection of two new school buildings. The Board levied a tax on the taxable property of the district for the payment of the bonds. This action by the board was taken without a vote by the people either as to the issuance of the bond or as to the levy of a tax in excess of the limitations fixed by general laws. As the lower court refused to grant an injunction, an appeal was prosecuted to the Court of Appeals. In granting the injunction the Court of Appeals held:

· 1. Under the law reorganizing the state government (GC., Secs. 154-1 to 154-8), the director of the Industrial Relations Department is to "exercise the powers and perform the duties vested by law in such department" (GC., Sec. 154-3).

2. The office of Chief of Division of Factory Inspection is under the "direction, supervision and control" of said Director, whose duty it is to prescribe the duties that shall be performed by such Chief of Division (GC., Sec. 154-8); the making of an order by said department prohibiting the use of school buildings is an official act required to be shown on the records of such department (GC., Sec. 154-18).

3. A letter on the stationery of the department, not bearing the seal of the department and not signed by the department, but merely signed "Yours truly, T. P. Kearns, Chief of Division," and mailed to a board of education, which letter purports to prohibit the use of nine school buildings in different parts of a school district (there being no record in the department of the authority of such Chief and no record in the department of any official action taken in reference to such letter, but merely a carbon copy of the letter kept on file) is not a valid order of such department prohibiting the use of such school buildings for their intended purpose and creating an emergency under GC., Sec. 7630-1, and does not authorize the board of education to issue and · sell bonds to construct two new school buildings to take the place of said nine school buildings for the proper accommodation of the schools of the district.

Attorneys—H. A. Pounds, for Schwartz et al; Webber & Symons and Fauver & Cheney, for Board of Education; all of Elyria.

## No. 80
## ELTON MOTOR CAR CO. v. YOUNG

Ohio Appeals, 7th Dist., Mahoning County

Decided Nov. 2, 1923

951. PRINCIPAL AND AGENT—Principal must repudiate sale promptly unless he is unable to do so.

114. ATTORNEY AND CLIENT—Attorney's testimony concerning information obtained from client cannot be considered strongly against client.

POLLOCK, J.

### Epitomized Opinion
#### First Publication of this Opinion

Young brought an action in the Municipal Court of Youngstown to recover the balance of the purchase price from the sale of an automobile. Young purchased an automobile from the Elton Motor Car Company upon a deferred payment plan. Before he had completely paid for the machine he entered into an arrangement with the company by which he returned the car to it to sell and apply the purchase price first upon the amount due on the car and the balance to him. The company resold the car for $800, $100 in cash and the remainder in 14 notes of $50 each. These notes were made payable to the company. Young protested because the money was not paid in cash. The purchaser, one Neff, became insolvent and failed to pay the balance on the purchase price of this car. Thereupon Young sued the company to recover the amount due him after the company had deducted the amount that he still owed it. The attorneys for defendant testified to conversations with Young regarding collection of the Neff notes and cross-examined Young as to conversations in their office, contending that Young owned the notes for the balance and that they were acting for him in collecting the same. In affirming the judgment in favor of Young, the Court of Appeals held:

Attorneys—Nicholson & Warnock, for Elton Motor Car Co.; L. L. George, for Young.

## OHIO SUPREME COURT —Continued

### No. 82
### STATE v. CHAMPION
(Continued from Page 87)

as to the subjects of assault and battery, and assault, and on the subject of accidental shooting and the law of self defense, as they related to the case. The court refused to give the requested charges as to assault, assault and battery and self defense, but informed the jury that if it found that the death of the party was due to accident, it was their duty to find the defendant not guilty. Counsel then excepted generally to the charge of the court, and specifically to the refusal to charge as requested, as to assault, assault and battery and self-defense. No exception was made to what he said as to accidental homicide; no further request was made to charge upon that subject, clearly indicating that counsel were content with the charge under the evidence, the argument that had been made, and what the court had said in its general charge.

Counsel owes a duty to the court as well as to his clients to aid the court in presenting pertinent and proper charges as to the law fitting the issues and the evidence touching them. The court might have said something further as to the discharge of the gun touching accident or misadventure, but the fact remains that the counsel for the prisoner was content with what the court did say in connection with what it had theretofore said, in its general charge, touching the burden of proof upon the state, to establish all the elements of the offense beyond a reasonable doubt, and it is too late now to further complain in this behalf.

The fact that requests were asked on both accidental homicide and self defense, under the same evidence, presents a peculiar paradox—a direct contradiction in terms and truth. Self defense presumes intentional, wilful use of force, to repel force and escape force. Accidental force or shooting is exactly contrary. If the evidence warrants, the defendant has the right to one request or the other, but not to both.

3. Undoubtedly in cases of homicide convictions may be had for assault and battery, but only where there is a "reasonable doubt" or evidence suggesting the same, that the force and violence used did not cause the death. But where it is clear and conclusive that the force and violence used did cause the death, it would be mere mockery for the court to charge or the jury to find as to the minor offense. The defendant was guilty of some degree of murder, or guilty of nothing. The jury is not

a pardoning board, and the court was right in refusing to charge as to these minor offenses. State v. Schaefer, 96 OS. 215, and Bandy v. State, 102 OS. 184, followed and approved.

4. It is claimed that the reversal by the Court of Appeals is justified upon error in the admission of rebuttal evidence on behalf of the state. It is elementary that such evidence should have been offered in chief, but the court gave the defense the opportunity, not only to cross examine the witnesses, but in addition thereto to introduce evidence to rebut this evidence, and it is impossible to conceive how this constituted prejudicial error for which a new trial should be granted.

5. A reversal is insisted upon, on account of misconduct of counsel for state, and argument to the jury. The presumption is that the court properly restrained counsel on both sides, and error in this respect, to be the basis of a reversal, must clearly appear. While the argument for counsel for state is in the record and that of the accused's counsel is not, we are unable to say how much of it was in direct reply to that of defendant's counsel.

As to the absence from the trial of defendant's husband and other witnesses who were present at the time of the homicide, that may properly be the subject of comment by counsel for the state, unless their absence be reasonably accounted for by defendant. It is the presumption of fact as well as in law, that if the witness known to be present at the time of a vital event is available to testify, and fails to be called upon or have his deposition taken, or his absence accounted for by the party in whose favor he would naturally be expected to testify, it is not improper for counsel on the other side to infer that his testimony would be unfavorable to the defendant and this is a proper subject for comment in a court of justice.

We find no reversible error prejudicial to the substantial rights of the prisoner; indeed she may count herself most fortunate in not being found guilty of a more serious offense. The judgment of the Court of Appeals is reversed and that of the Common Pleas affirmed.

Attorneys—Edward C. Stanton, Pros. Atty., and James Cassidy, Asst Pros., for State; Reed, Meals, Orgill & Maschke, for accused; all of Cleveland.