[Cite as *State v. Dixon*, 2022-Ohio-2582.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 110972 |
| v. | : | |
| SHAVARRI DIXON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 28, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-653877-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory M. Paul, Warren W. Griffin, and Thomas Rovito, Assistant Prosecuting Attorneys, *for appellee.*

Joseph V. Pagano, *for appellant.*

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Defendant-appellant Shavarri Dixon appeals from his judgment of conviction, which was rendered after a bench trial. He challenges the conviction based on the sufficiency and weight of the evidence, as well as the effectiveness of

his trial counsel.  Appellant also challenges the trial court's decision to impose consecutive sentences.  After a thorough review of the facts and law, we affirm the trial court's judgment.

**Procedural and Factual History**

{¶ 2} In November 2020, a Cuyahoga County Grand Jury returned a seven-count indictment against appellant charging him with the following crimes:

- Count 1, murder, R.C. 2903.02(A), an unclassified felony;

- Count 2, murder, R.C. 2903.02(B), an unclassified felony;

- Count 3, felonious assault, R.C. 2903.11(A)(1), a second-degree felony;

- Count 4, involuntary manslaughter, R.C. 2903.04(A), a first-degree felony;

- Count 5, improperly handling firearms in a motor vehicle, R.C. 2923.16(A), a fourth-degree felony;

- Count 6, improperly handling firearms in a motor vehicle, R.C. 2923.16(B), a fourth-degree felony; and

- Count 7, having weapons while under disability, R.C. 2923.13(A)(2), a third-degree felony.

{¶ 3} With the exception of Count 7, all counts contained one- and three-year firearm specifications.

{¶ 4} After being indicted, appellant was referred to the court psychiatric clinic for an evaluation for competency to stand trial.

{¶ 5} In February 2021, appellant waived his speedy-trial rights.  Appellant also stipulated to the psychiatric report, in which the psychiatrist opined that appellant was competent to stand trial.  In September 2021, appellant waived his

right to a jury trial and the case proceeded to a bench trial at which the state presented several witnesses in its case-in-chief and appellant and his mother testified for the defense. The following facts were adduced.

{¶ 6} At the time of the incident giving rise to the charges, appellant was in violation of community-control sanctions on two separate felony cases — one for burglary and the other for receiving stolen property — and there were two warrants out for his arrest. Appellant was dating and living with the victim, Xenaundriyeah Piskac ("the victim"). At all relevant times, appellant was not gainfully employed; rather, he sold marijuana "on the streets." The victim knew of appellant's drug dealings, and there was one female "customer," Shay, for whom the victim would request that she accompany appellant whenever he sold to her.

{¶ 7} On the date of the incident, which occurred in Garfield Heights, appellant and his friend, Kenyard Drake,[1] spent the day (approximately eight to nine hours) driving around smoking and selling marijuana. The two were in appellant's car, and appellant was driving. The car had dark tinted windows in both the front and rear. Near the end of their time together, they went to Shay's house where they stayed for a few minutes smoking with her.

{¶ 8} Drake testified that after they left Shay's house, the victim called appellant and asked where he was. Appellant told the victim that he was about to drop Drake off at Drake's residence, which he did.

---

[1] Drake is also referred to in the transcript as "man-man."

**{¶ 9}** Appellant testified that while he and Drake were driving around, appellant had a gun under his thigh; he did not want Drake to know that he had it because Drake does not like guns. According to appellant, he needed the gun because he has enemies — people who are jealous of him — and he has previously been shot and shots have previously been fired at his residence.

**{¶ 10}** Appellant had a feeling that someone was following him as he and Drake were driving around on the day in question. After appellant dropped Drake off, he took the gun out from underneath his thigh and put it "in his hand on his lap." Moments after Drake exited appellant's car, his driver's side door "swung" open and appellant immediately fired two shots out the door. He testified that he did not look to see who was there; rather, he turned away, covered his face, and fired. Although his car has tinted windows, appellant was able to see out of them because he testified that he saw Drake walking from approximately 200 feet away.

**{¶ 11}** After firing the shots, appellant got out of his car and discovered that the person who opened his door, and whom he shot, was the victim, his girlfriend. She was shot twice in the chest. Appellant carried her to the front passenger seat and proceeded to drive to his mother's house in Garfield Heights. He Face Timed his mother on the way to tell her he was coming with the victim who was shot.

**{¶ 12}** Appellant testified that he is aware there is an emergency medical facility, Marymount Hospital, in Garfield Heights and he knows where it is located. He explained that he decided to take the victim to his mother's house, an approximate two minute drive from the shooting scene, because the steering on his

car was malfunctioning and he did not think his car could make the approximate seven minute drive to the hospital speeding with the malfunction. Appellant admitted that his mother has no medical or life-saving technique training for gunshot victims. He further explained that he did not call 911 on the scene of the shooting because he was scared and had never been in a situation like this before.

{¶ 13} Appellant's mother testified that when appellant called her, he was panicked and screaming. She went outside and waited for him to arrive. She did not render any care to the victim because she has no training in life-saving measures. The mother explained that she had her phone in her hand and was about to dial 911, but instead had her daughter run across the street to a neighbor's house to tell them to call 911. At some point during this time, appellant was able to slip away and hide the murder weapon in his mother's basement.

{¶ 14} The police were the initial first -responders to the mother's house. An officer administered CPR on the victim until the paramedics arrived. The paramedics continued life-saving measures for the victim and transported her to Marymount Hospital in Garfield Heights.

{¶ 15} Meanwhile, appellant remained at his mother's house with the police. Appellant was evasive in response to questions from the police — he told them his name was "Teandre Taylor," a name he made up, and gave a false date for his birth. Appellant eventually told the police that the gun was in the basement. The police retrieved the gun and took appellant into custody.

{¶ 16} The police continued interviewing appellant, and appellant continued being evasive and giving misstatements. He falsely told the police there had been a "shoot-out" after Drake got out of his car and that "Matthew" Drake was the shooter. He refused to give the police Drake's correct first name.

{¶ 17} Eventually, after appellant learned that the victim passed away, he told the police the truth. He maintained that the shooting was accidental, not intentional.

{¶ 18} At trial, appellant made two Crim.R. 29 motions for judgment of acquittal relative to Counts 1, 2, and 3[2] — one at the conclusion of the state's case and one at the conclusion of his case — both of which were denied. After its deliberations, the trial judge found appellant guilty on all counts and specifications. The trial court sentenced appellant to a total term of 21 years to life, which included consecutive terms.

**Assignments of Error**

I.  The trial court erred when it denied Appellant's motion for acquittal under Crim.R. 29 because the State failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

---

[2] Although counsel stated at trial that his Crim.R. 29 motion was only relative to the murder charges under Counts 1 and 2, Count 2 charged felony murder with felonious assault as the predicate offense. Thus, counsel's argument in support of the motion included an argument that the evidence was insufficient to support felonious assault, which was charged under Count 3.

II.     Appellant's convictions are against the manifest weight of the evidence.

III.    Appellant received ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and Section 10, Article 1 of the Ohio Constitution if self-defense was not properly asserted because the facts warrant a rebuttable presumption pursuant to R.C. 2901.05(B)(2).

IV.    Appellant's sentence is contrary to law because consecutive sentences are not supported by the record.

**Law and Analysis**

**Sufficiency of the Evidence**

{¶ 19} In his first assignment of error, appellant contends that "[t]he trial court denied [his] due process under both the State and Federal Constitutions when it failed to direct a verdict of acquittal as to all charges pursuant to Crim.R. 29." We initially note that appellant's Crim.R. 29 motion was only directed to Counts 1, 2, and 3, murder under R.C. 2903.02(A) and (B) and felonious assault under R.C. 2903.11(A)(1), respectively, and limit our discussion to those counts.

{¶ 20} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). We examine the

evidence in the light most favorable to the state and determine whether any rational trier of fact could have found that the state proved, beyond a reasonable doubt, all of the essential elements of the crime. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). In reviewing the sufficiency of the evidence, this court must not "disturb the verdict unless [the court] determine[s] that reasonable minds could not arrive at the conclusion reached by the trier of fact." *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 81. Reviewing courts do not evaluate witness credibility when reviewing the sufficiency of the evidence. *Id.*

{¶ 21} Count 1 charged murder in violation of R.C. 2903.02(A). That section provides that "[n]o person shall purposely cause the death of another * * *." Pursuant to R.C. 2901.22(A), "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender tends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."

{¶ 22} Count 2 charged murder under R.C. 2903.02(B), the felony-murder statue, which provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." The predicate offense for Count 2 was felonious assault, charged in Count 3. R.C. 2903.11(A)(1) governing felonious

assault provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another."

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶ 23} Appellant contends that his convictions for murder and felonious assault under Counts 1, 2, and 3 are not supported by sufficient evidence because he acted in self-defense in shooting the victim. Appellant further contends, as he did at trial, that "[t]he tragic circumstances in this case were the result of an 'accident' or 'mistake of fact.'" Thus, according to appellant, he did not act "purposely" or "knowingly."

{¶ 24} Appellant did not raise self-defense at the trial-court level. Rather, the defense was that it was an accident that appellant shot his girlfriend. A defense of self-defense would have been inconsistent with his accident defense. As this court explained:

> "A defendant claiming self-defense 'concedes that he [or she] had the purpose to commit the act, but asserts that he [or she] was justified in his actions.'" *State v. Davis*, 8th Dist. Cuyahoga No. 109890, 2021-Ohio-2311, ¶ 38, quoting *State v. Talley*, 8th Dist. Cuyahoga No. 87413, 2006-Ohio-5322, ¶ 45. Because self-defense presumes an intentional, willful use of force, "'when an individual testifies that they did not intend to cause harm, such testimony prevents the individual from

claiming self-defense.'"  *Id.*, quoting *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 54.

*State v. Grayson*, 8th Dist. Cuyahoga No. 110388, 2021-Ohio-4312, ¶ 25.

{¶ 25} Thus, appellant's contention now on appeal that he acted in self-defense is incompatible with his defense at trial that the killing of his girlfriend was an accident.

{¶ 26} In regard to appellant's accident defense, the state maintains that under the theory of transferred intent it does not matter that appellant may not have intended to specifically kill the victim, rather it only mattered that he intended to kill someone.  We agree.  Under the theory of transferred intent, "an offender who intentionally acts to harm someone but ends up accidentally harming another is criminally liable as if the offender had intended to harm the actual victim."  *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, ¶ 15.

{¶ 27} The state presented sufficient evidence that appellant acted purposely and knowingly under the theory of transferred intent.  Appellant testified he had his gun "in his hand on his lap" when the victim opened his car door and immediately upon the door being opened, appellant raised the gun and shot twice.  Thus, the state presented sufficient evidence that appellant acted with the intent to shoot whoever it was that opened the door.  The trial court properly denied appellant's Crim.R. 29 motions for acquittal.

{¶ 28} The first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶ 29} In his second assignment of error, appellant contends that the murder and felonious assault convictions are against the manifest weight of the evidence.

{¶ 30} Unlike a challenge to the sufficiency of the evidence, a manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the factfinder.

> "Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered."

*State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41, quoting *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.).

{¶ 31} An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, 6 N.E.3d 649, ¶ 32. Notably, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts[,]" who is "free to believe all, part, or none of the testimony of each witness." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35.

{¶ 32} The trial court's decision here did not create a manifest miscarriage of justice. Appellant again contends that he acted in self-defense in support of the conviction being against the manifest weight of the evidence but, as already discussed, that was not the defense strategy at trial — a decision we will not second-guess.

{¶ 33} Appellant also contends that his "cooperation" demonstrates that his conviction is against the manifest weight of the evidence. According to appellant, "[d]espite being scared and evasive with the police initially, [he] remained on the scene and told them where to find the gun." Appellant's attempt to portray himself as cooperative is belied by the record. More than being "evasive," he was untruthful with the police. Further, appellant's actions surrounding the shooting and the moments thereafter are similarly not helpful to his position.

{¶ 34} The evidence demonstrates that the victim was shot twice in the chest. After appellant shot her, he did not call 911 — ostensibly as a self-preserving measure because he knew he had two outstanding warrants for his arrest — rather, he transported her to his mother's house, knowing his mother had no training in life-saving techniques for gunshot victims and despite knowing that there was a hospital in close proximity.

{¶ 35} The trial court found — and we agree — that "regardless of whether [appellant] intended to kill [the victim] specifically, [he] intended to kill someone." On the record before us, appellant's manifest weight of the evidence challenge is without merit.

{¶ 36} The second assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶ 37} In his third assignment of error, appellant contends that he received ineffective assistance of counsel because his counsel failed to raise self-defense.

{¶ 38} To prevail on an ineffective assistance of counsel claim, appellant must show his defense counsel's performance was deficient and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defense counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Id.* at 688. To show prejudice, appellant must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694. A reviewing court "need not address both prongs of *Strickland* if an appellant fails to prove either prong." *State v. Carter*, 2017-Ohio-8847, 100 N.E.3d 1107, ¶ 27 (9th Dist.). In applying the *Strickland* test, courts must always recall that properly licensed counsel is presumed competent and that trial counsel must be afforded deference regarding trial strategy. *In re Roque*, 11th Dist. Trumbull No. 2005-T-0138, 2006-Ohio-7007, ¶ 11.

{¶ 39} In *State v. Inabnitt*, 12th Dist. Warren No. CA2021-02-013, 2022-Ohio-53, the Twelfth District addressed a claim of ineffective assistance of counsel based on counsel's failure to raise self-defense at trial where, as here, accident was the defense. The court stated the following:

First, the decision to raise any given defense falls squarely within defense counsel's latitude in choosing a trial strategy. *State v. Cobb*, 12th Dist. Butler No. CA2007-06-153, 2008-Ohio-5210, ¶ 53. Second, even if we questioned counsel's choice of defense, which we do not, we would not find that counsel's decision not to pursue self-defense constituted deficient performance. Defense counsel chose to pursue the defense of accident. Where an accident theory is raised, the decision not to pursue a self-defense theory is reasonable because the two defenses are inconsistent. *State v. Rigdon*, 12th Dist. Warren No. CA2006-05-064, 2007-Ohio-2843, ¶ 47. "'Self-defense presumes intentional, willful use of force to repel force or escape force. Accidental force * * * is exactly the contrary, wholly unintentional and unwillful.'" *State v. Barnd*, 85 Ohio App.3d 254, 260, 619 N.E.2d 518 (3d Dist.1993) quoting *State v. Champion*, 109 Ohio St. 281, 286-287, 2 Ohio Law Abs. 68, 2 Ohio Law Abs. 87, 142 N.E. 141 (1924).

*Inabnitt* at ¶ 54.

{¶ 40} Appellant maintained at trial that his actions were unintentional, an accident. Because a defense of accident is incompatible with self-defense, appellant's counsel was not deficient for not raising self-defense.

{¶ 41} The third assignment of error is overruled.

**Consecutive Sentences**

{¶ 42} In his final assignment of error, appellant challenges the trial court's imposition of consecutive sentences.

{¶ 43} There are two ways a defendant can challenge consecutive sentences on appeal. *State v. Tidmore*, 8th Dist. Cuyahoga No. 107369, 2019-Ohio-1529, ¶ 15; *State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, ¶ 7. First, the defendant can argue that consecutive sentences are contrary to law because the trial court failed to make the findings required by R.C. 2929.14(C)(4). *See* R.C.

2953.08(G)(2)(b). Second, the defendant can argue that the record clearly and convincingly does not support the findings made under R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a).

{¶ 44} To impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and (3) at least one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 45} The trial court must make the required statutory findings at the sentencing hearing and incorporate those findings into its sentencing journal entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.

{¶ 46} To make the requisite findings under the statute, "'The [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory

criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29. When considering whether the trial court has made the requisite findings, an appellate court must view the trial court's statements on the record "in their entirety." *State v. Blevins*, 2017-Ohio-4444, 93 N.E.3d 246, ¶ 25 (8th Dist.).

{¶ 47} The record reflects that the trial court made all of the requisite findings for the imposition of consecutive sentences at the sentencing hearing. Specifically, the court found the following:

> I find that a consecutive prison sentence is necessary to protect the community and to punish you. It's not [dis]proportionate, and I find that the harm is so great and unusual that a single term does not adequately reflect the seriousness of your conduct. Your criminal history shows that a consecutive sentence is necessary to protect the public, and I also find that you committed one or more of the multiple offenses while you were awaiting trial or sentencing or was under community control or was under post-release control.
>
> * * *
>
> So also, the Court * * * finds that a consecutive prison sentence is necessary because there isn't any greater harm than a life being lost, and I've already placed on the record the horrific nature of this life being lost. This was a random act of violence toward an individual and this individual being shot and killed for no reason but due to * * * this selfishness of the defendant and continuing to be involved in criminal conduct. So for these reasons, I find that a consecutive sentence is necessary.

{¶ 48} The trial court incorporated the findings into its sentencing judgment as required by *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at syllabus. Appellant acknowledges that the trial court made the required findings and incorporated them into the sentencing judgment. Appellant contends that the record does not support the findings, however. We disagree.

{¶ 49} Appellant did not establish by clear and convincing evidence that the trial court's findings are not supported by the record. To the contrary, the trial court explained its rationale behind its findings that are supported by the record. Specifically, the killing occurred "because of the life * * * [appellant] continued to lead." Appellant has a criminal history and, as the trial court noted, was on community-control sanctions at the time of the incident and "had multiple opportunities to get [his] life back on track." Instead of affording himself of those opportunities, appellant "chose the life of crime that was clear throughout the trial in this case." The "life of crime" led by appellant resulted in him deeming it necessary for him to "carry a gun while * * * selling drugs, [because he was] fearful that someone's going to come up and rob [him] or attack [him,]" and it resulted in the death of the victim. The trial court further reasoned that consecutive sentences are necessary to protect the public from future harm by appellant.

{¶ 50} The trial court made the statutorily mandated findings for the imposition of consecutive sentences, and appellant did not establish by clear and convincing evidence that they are not supported by the record

{¶ 51} The fourth assignment of error is overruled.

**Conclusion**

{¶ 52} The state presented sufficient evidence to support the murder and felonious assault convictions, and the convictions are not against the manifest weight of the evidence. Appellant's trial counsel was not ineffective for not pursuing a self-defense theory; the defense was this was an accident, and that defense is inconsistent with self-defense. The trial court made the statutorily mandated findings for the imposition of consecutive sentences, and the findings are clearly and convincingly supported by the record.

{¶ 53} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR