[Cite as *State v. Carter*, 2017-Ohio-8847.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 27717 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| NATHANIEL CARTER, JR. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2014 06 1821 |

DECISION AND JOURNAL ENTRY

Dated: December 6, 2017

SCHAFER, Presiding Judge.

{¶1} Defendant-Appellant, Nathaniel Carter Jr., appeals from his convictions in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} On July 7, 2014, the Summit County Grand Jury indicted Carter on the following six counts: (I) aggravated murder in violation of R.C. 2903.01(A), a special felony, with firearm specifications pursuant to R.C. 2941.145 and R.C. 2941.146; (II) murder in violation of R.C. 2903.02(B), a special felony, with firearm specifications pursuant to R.C. 2941.145 and R.C. 2941.146; (III) felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, with firearm specifications pursuant to R.C. 2941.145 and R.C. 2941.146; (IV) felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, with firearm specifications pursuant to R.C. 2941.145 and R.C. 2941.146; (V) having weapons while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony; and (VI) tampering with evidence in violation of R.C.

2921.12(A)(1), a third-degree felony. The indictment arose from a "drive-by" shooting that killed 18-year-old Donald Carter, Jr.[1] ("the victim") on the night of June 11, 2014. Carter pleaded not guilty to the charges contained in the indictment and the matter proceeded to a jury trial.

{¶3} At trial, 21 witnesses testified on behalf of the State. At the close of the State's case-in-chief, Carter made a Crim.R. 29 motion for judgment of acquittal, which the trial court summarily denied. The defense then rested without calling any witnesses. The jury deliberated and ultimately found Carter not guilty of aggravated murder, but guilty of the five remaining offenses and specifications thereto. The trial court subsequently sentenced Carter according to law.

{¶4} On March 11, 2015, Carter filed a motion for delayed appeal, which this Court granted. *See State v. Carter*, 9th Dist. Summit No. 27717 (Mar. 31, 2015). Carter's appellate counsel thereafter filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), stating that counsel had reviewed the trial record and concluded that there were no viable issues to pursue on appeal. Carter's appellate counsel also moved to withdraw as counsel of record. This Court then issued a magistrate's order affording Carter an opportunity to raise arguments after review of the *Anders* brief. Carter subsequently filed a motion seeking appointment of new appellate counsel, as well as a motion to dismiss his counsel's *Anders* brief, wherein he raised arguments that he wished to pursue on direct appeal. After reviewing the trial record, this Court determined that there was at least one arguable issue for appeal. *See State v. Carter*, 9th Dist. Summit No. 27717 (Sep. 7, 2016). Accordingly, this Court granted Carter's appellate counsel's motion to withdraw and appointed new appellate counsel to brief any discernable issues. *Id.*

---

[1] Carter and the victim are not related.

{¶5} Carter's new appellate counsel thereafter filed a timely merit brief presenting four assignments of error for our review. To facilitate our analysis, we elect to address Carter's assignments of error out of order. For ease of analysis, we also elect to address Carter's second and third assignments of error together.

## II.

### Assignment of Error IV

**The verdict was against the manifest weight of evidence. The State of Ohio failed to establish beyond a reasonable doubt when viewed by the manifest weight of the evidence that Nathaniel Carter was involved in the murder of Donald Carter. The court erred, therefore, in failing to grant Mr. Carter's Rule 29 motion for acquittal.**

{¶6} In his fourth assignment of error, Carter contends that his convictions are both unsupported by sufficient evidence and against the manifest weight of the evidence. We disagree.

{¶7} "'We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence.'" *State v. Smith*, 9th Dist. Summit No. 27389, 2015-Ohio-2842, ¶ 17, quoting *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. A sufficiency challenge of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins,* 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* Although we conduct de novo review when

considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775 , ¶ 33.

{¶8} A sufficiency challenge is legally distinct from a manifest weight challenge. *Thompkins* at 387. When applying the manifest weight standard, we are required to consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson,* 9th Dist. Summit No. 26900, 2013–Ohio–5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins* at 387.

{¶9} This matter implicates Carter's convictions for murder, felonious assault, having weapons while under disability, and tampering with evidence, along with the attendant firearm specifications thereto. On appeal, Carter does not dispute the underlying elements of these offenses. Rather, Carter contends that the State failed to meet its burden of production solely with respect to the issue of identity. As such, we will confine our analysis to this issue.

{¶10} "'It is well settled that in order to support a conviction, the evidence must establish beyond a reasonable doubt the identity of the defendant as the person who actually committed the crime at issue.'" *State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 13, quoting *State v. Johnson*, 7th Dist. Jefferson No. 13 JE 5, 2014–Ohio–1226, ¶ 27, citing *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013–Ohio–488, ¶ 19 and *State v. Lawwill*, 12th Dist.

Butler No. CA2007–01–014, 2008–Ohio–3592, ¶ 11. "[D]irect or circumstantial evidence is sufficient to establish the identity of the accused as the person who committed the crime." *Collins* at ¶ 19, citing *Lawwill* at ¶ 11.

{¶11} At trial, four of the State's 21 witnesses positively identified Carter as the "drive-by" shooter on the night in question. First, Tracy W., the mother of the victim's best friend, Dana W., testified that she was hosting a birthday party for her adult nephew on the night in question. Tracy W. testified that while she was in the backyard of a neighboring building preparing to cut the birthday cake, her son, Dana W., daughter, Taresa W., niece, Dominique W., and the victim were all hanging out on the stoop area of her apartment building on the corner of Marcy Street and Cole Avenue. Tracy W. testified that as she was about to cut the cake, she heard several gunshots. She stated that upon hearing the gunshots, she "looked and [she] seen a red truck go by and [she] seen the shots coming from the truck." She then testified that she immediately called 9-1-1 after observing that the victim had been shot. Tracy W. stated that when the police arrived at the scene, she informed them that Nathaniel Carter, Jr. was the shooter. Tracy W. proceeded to identify Carter in court as the person who shot and killed the victim on the night in question.

{¶12} Second, Taresa Lynn W. testified that on the night in question, she was sitting in front of her mother's building on Cole Avenue with her brother, Dana W., her cousin, Dominique W., and the victim. Taresa W. also testified that she was aware that Dana W. and Carter had a contentious relationship, including a violent confrontation that occurred just two days prior to the day in question. She further testified that at some point while the four of them were conversing, Sheldon C., one of Carter's "really good friends," drove down the street and looked at them. According to Taresa W.'s trial testimony, Dana W. then stated, "I bet you any

amount of money [Sheldon C. is] about to call [Carter] and tell him I'm out here." She testified that approximately 15-20 minutes later, she saw a red truck driving down the street in their direction. Taresa W. testified that she was fearful and began to run around the apartment building, at which time she heard gunshots. She testified that "[w]hen I turned as I was running around trying to look and see, that's when I see [Carter] ride by shooting." Taresa W. subsequently identified Carter in court as the shooter on the night in question.

{¶13} Third, Theresa T. testified that she was visiting with family at her daughter's house on Andrus Street on the night in question. Evidence presented at trial demonstrated that the crime scene is located just down the street and is visible from the front of Theresa T.'s daughter's house. Theresa T. testified that at some point that evening, she saw Dana W., who was standing on Cole Avenue near Marcy Street, fall to the ground and begin crawling. Theresa T. also testified that she then saw bullets ricochet on the sidewalk near Dana W.'s foot or ankle. Theresa T. testified that as she was in the process of moving her family members to safety, she saw a red SUV turn off of Cole Avenue onto Andrus Street and drive right past her location. Theresa T. testified that as the red SUV drove by, the driver "did a mean mug at us," which she clarified was a mean and threatening expression. Theresa T. subsequently identified Carter in court as the man driving the red SUV who made the "mean expression" at her.

{¶14} Lastly, Cheryl D., Theresa T.'s sister, testified that she was staying at her niece's house on the corner of Andrus Street and Cole Avenue on the night in question. Cheryl D. testified that she did not know Dana W. or the victim. Cheryl D. further testified that she was sitting on the front porch of her niece's house with her sister that evening while "[t]he kids were outside playing in the front yard." She stated that from her vantage point, she could see the corner of Marcy Street and Cole Avenue "very well." She testified that at some point that

evening she "heard gunshots. About six of them went off, pop, pop, pop, pop, pop[.]" Cheryl D. explained that she recognized the sounds as gunfire and immediately ordered the children to "[g]et in the house and lay on the floor." She testified that when she looked up, she saw a red truck turn right onto Andrus Street and drive past her. Cheryl D. testified that the driver of the red truck "turned around and looked at me and him and me made direct contact. I turned around and I said, 'That's the shooter,' like that." Cheryl D. stated that the driver "had a real mean look on his face. He looked me straight in my eyes. He was real mean and, you know, had a real mean frown on his face and – and I looked. I said, 'That's the shooter.'" Cheryl D. explained that she concluded that the man in the red truck was the shooter "'[c]ause of the expression on his face and at the time that he made the turn [onto Andrus Street] the shots stopped. They stopped. And everything came to a stop, and he was the only thing moving at that time." She then identified Carter in court as the driver of the red truck on the night in question.

{¶15} Viewing this evidence in a light most favorable to the State, we determine that any rational trier of fact could have found beyond a reasonable doubt that Carter was the individual who committed the charged offenses on the night in question. This evidence, if believed, demonstrates that while he was driving a red vehicle, Carter committed a "drive-by" shooting, which killed the victim on the night of June 11, 2014. Accordingly, we conclude that the State met its burden of production at trial.

{¶16} Turning to his manifest weight argument, Carter contends that his convictions are against the manifest weight of the evidence because Dana W. and members of Dana W.'s family provided biased and unreliable testimony on the State's behalf. However, this Court has routinely held that "[c]redibility determinations are primarily within the province of the trier of fact." *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012–Ohio–4094, ¶ 42, citing *State v.*

*Violett*, 9th Dist. Medina No. 11CA0106–M, 2012–Ohio–2685, ¶ 11. "The fact-finder 'is free to believe all, part, or none of the testimony of each witness.'" *Id*., quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011–Ohio–3250, ¶ 35. Here, the jury reviewed all of the evidence and assessed the credibility of each witness. The jury apparently accepted the testimony of the State's witnesses which, if believed, supports the conclusion that Carter shot and killed the victim on the night in question. After reviewing the record, we cannot conclude that the jury lost its way and committed a manifest miscarriage of justice in convicting Carter of the charged offenses, especially considering the fact that two disinterested witnesses, Theresa T. and Cheryl D., buttressed the W. family's testimony that Carter was the individual responsible for the fatal "drive-by" shooting.

{¶17} Carter's fourth assignment of error is overruled.

### Assignment of Error I

**Nathaniel Carter, Jr.'s constitutional and statutory right to a speedy trial was violated when the trial date was unreasonably continued outside the statutory timeframe. It is ineffective representation by defense counsel to fail to move the court to dismiss on speedy trial issues to further protect the issue on appeal. This Court can review as failure to raise this issue is plain error which Mr. Carter has not waived.**

{¶18} In his first assignment of error, Carter argues that (1) his right to a speedy trial was violated when the trial date was unreasonably continued outside the statutory timeframe, and (2) his trial counsel provided ineffective assistance by failing to move for a dismissal of the indictment due to a purported speedy trial violation. We disagree on both points.

**A. Right to A Speedy Trial**

{¶19} At the outset, we note that the argument portion of Carter's appellate brief solely addresses his speedy trial rights under R.C. 2945.71 et seq. Accordingly, we confine our analysis to Carter's argument concerning his statutory right to a speedy trial. *See State v. Detamore*, 9th Dist. Wayne No. 15AP0026, 2016-Ohio-4682, ¶ 6 (noting that since appellant failed to preserve or otherwise develop an argument with respect to his constitutional right to a speedy trial, this Court would only address whether his statutory right to a speedy trial was violated).

{¶20} In this case, a review of the record shows that Carter did not file a motion to discharge the case based on a speedy trial violation. Therefore, Carter has forfeited all but plain error. Plain error may only be invoked where the following three elements exist:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of the trial.

(Internal citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Nonetheless, plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶21} R.C. 2945.71(C)(2) provides that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within two hundred seventy days after the person's arrest." "[E]ach day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). Thus, if the accused is held in jail in lieu of bail, the time within which the trial must be held is 90 days. *See id.* When calculating speedy trial time, the day of arrest is not to be counted. *State v. Friedhof*, 9th Dist. Medina No. 2505-M,

1996 Ohio App. LEXIS 3018, *8 (July 10, 1996), citing *State v. Steiner*, 71 Ohio App.3d 249, 250-251 (9th Dist.1991); *See also* Crim.R. 45(A). "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by [R.C. 2945.71]." R.C. 2945.73(B).

{¶22} However, in addition to the time limits set forth in R.C. 2945.71, R.C. 2945.72 provides for the tolling of the speedy trial statute due to continuances of criminal trial dates. That statute states in relevant part, "[t]he time within an accused must be brought to trial * * * may be extended only by the following * * * (H) [t]he period of any continuance granted on the accused's own motion, and *the period of any reasonable continuance granted other than upon the accused's own motion*[.]" (Emphasis added.)

{¶23} Here, Carter was arrested on June 11, 2014. Thus, the speedy trial clock began running in this matter on June 12, 2014. *See Friedhof* at *8, citing *Steiner* at 250-251. Assuming the time within which Carter must have been brought to trial was not tolled by any of his own motions, that time would have expired on September 10, 2014. However, at the July 16, 2014 pretrial conference, defense counsel informed the trial court that he had filed a motion for discovery, thus tolling the speedy trial clock. *See State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, ¶ 26, citing R.C. 2945.72(E). Subsequently, at the pretrial conference held on July 30, 2014, defense counsel informed the trial court that despite the fact he was waiting on discovery from the prosecutor, Carter was not willing to waive his speedy trial rights, but would "accept" September 15, 2014, as a trial date. Although there is no indication that Carter objected to this trial date, he is bound by his counsel's acceptance even if it was without his consent. *See State v. McBreen*, 54 Ohio St.2d 315 (1978) syllabus.

{¶24} Nonetheless, in a journal entry dated August 2, 2014, the trial court vacated the trial date "due to the Court's unavailability" and ordered a new trial date set for October 27, 2014. In that same order, the trial court noted that Carter "decline[d] to waive any irregularities in timeliness as to his right to a speedy trial."

{¶25} Although the trial court stated the trial was continued "due to the Court's unavailability," Carter does not argue on appeal that such a continuance was unreasonable in this matter, *see* R.C. 2945.72(H), and we decline to do so on his behalf. *See* App.R. 16(A)(7). However, a review of the transcript from a status hearing held August 20, 2014, shows that the trial court informed the parties that the trial court had a capital case scheduled to commence on September 3, 2014, and continue for four to six weeks thereafter. During that same status hearing, the prosecutor informed the trial court that another homicide case was scheduled to commence on September 15, 2014. The prosecutor stated that case was "older" than the present case and that the defendant in that case was in custody.

{¶26} Therefore, we cannot say the trial court committed plain error by not discharging Carter's case based on a speedy trial violation.

**B. Ineffective Assistance of Counsel**

{¶27} "The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel." *State v. Liu*, 9th Dist. Summit No. 24112, 2008-Ohio-6793, ¶ 22, citing *State v. Banks*, 9th Dist. Lorain No. 01CA007958, 2002-Ohio-4858, ¶ 16. "On the issue of counsel's ineffectiveness, [Carter, as the Appellant,] has the burden of proof because in Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, ¶ 62. To prove ineffective assistance of counsel, Carter must establish that (1) his trial counsel's performance was deficient, and (2) "the deficient performance prejudiced the

defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, an appellant "must prove that there exists a reasonable probability that, were it not for counsel's [deficient performance], the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong. *State v. Ray*, 9th Dist. Summit No. 22459, 2005–Ohio–4941, ¶ 10.

{¶28} However, we conclude that Carter has failed to meet his burden of demonstrating that he was prejudiced by his trial counsel's failure to file a motion to dismiss on the basis of a speedy trial violation. First, as discussed above, Carter does not argue that it was unreasonable for the trial court to continue his trial due to the trial court's unavailability. Nonetheless, a review of the record shows the trial court was scheduled to commence multiple trials which would conflict with Carter's September 15, 2014 trial date. Those cases included a four to six week capital case and a homicide case that had been pending longer than the present case. Second, while Carter asserts in his brief that "[n]o motions were filed, and no motion for discovery was filed tolling the speedy trial time[,]" such a claim is belied by the pretrial transcripts. Although a review of the record does not show when or if a motion for discovery was ever filed with the clerk of the Summit County Court of Common Pleas, a review of the transcript from the July 16, 2014 pretrial conference reflects that Carter's trial counsel represented to the trial court that he had made a motion for discovery. Indeed, the prosecutor subsequently referenced the defense's discovery motion at the August 20, 2014 status conference wherein the speedy trial issue was discussed at length. Nonetheless, the record is devoid of any information as to what date the motion was made or when the State complied with the discovery request. Absent these dates, this Court is unable to fully analyze whether Carter was brought to

trial within the timeframe set forth in R.C. 2945.71(C)(2) and R.C. 2945.71(E), as we cannot discern the tolling period applicable in this matter.

{¶29} Therefore, we determine that Carter has failed to meet his burden of demonstrating actual prejudice from his trial counsel's failure to file a motion to dismiss on the basis of a speedy trial violation.

{¶30} Carter's first assignment of error is overruled.

### Assignment of Error II

**It was improper to allow the testimony of Lt. Jerry Hughes who testified without objection that Nathaniel in his interview was "acting like he did it" even though he "[wasn't] admitting that he did it." It is ineffective assistance to fail to object to this testimony giving subjective opinion as to what Nathaniel actually meant by his behavior.**

### Assignment of Error III

**Nathaniel Carter was rendered ineffective assistance of counsel through trial defense by counsel's failure to meet the standard of professional conduct required in various parts of the trial.**

{¶31} In his second and third assignments of error, Carter argues that he received ineffective assistance of trial counsel. Carter advances several arguments in support of this contention. Specifically, Carter asserts that his trial counsel was ineffective by not objecting to purportedly improper opinion testimony, by failing to impeach a State's witness, by failing to cross-examine some of the State's witnesses on the issue of the shooter's identity, and by failing to present evidence supporting an argument made during his opening statement. We will address each argument in turn.

{¶32} "'The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel.'" *Liu*, 2008-Ohio-6793, at ¶ 22, citing *Banks*, 2002-Ohio-4858, at ¶ 16. "On the issue of counsel's ineffectiveness, [Carter, as the Appellant,] has the burden of proof

because in Ohio, a properly licensed attorney is presumed competent." *Gondor*, 112 Ohio St.3d 377, 2006–Ohio–6679, at ¶ 62. To prove ineffective assistance of counsel, Carter must establish that (1) his trial counsel's performance was deficient, and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. To demonstrate prejudice, an appellant must prove that "there exists a reasonable probability that, were it not for counsel's [deficient performance], the result of the trial would have been different." *Bradley*, 42 Ohio St.3d at paragraph three of the syllabus. This Court need not address both prongs of *Strickland* if an appellant fails to prove either prong. *Ray*, 2005–Ohio–4941, ¶ 10.

{¶33} In his second assignment of error, Carter argues that his trial counsel was ineffective by not objecting to Lieutenant Jerry Hughes' allegedly improper opinion testimony. Namely, Carter maintains that his trial counsel should have objected when Lt. Hughes testified that Carter acted like he was guilty during his police interrogation, despite the fact that Carter never confessed to the charged offenses. Additionally, Carter argues that his trial counsel should have objected when Lt. Hughes testified that Carter appeared to be "wrestling or coming to grips with" his actions, noting that Carter appeared to realize that his "life is over" "if [he] get[s] convicted of this murder[.]" Carter asserts that apart from being prejudicial, Lt. Hughes' opinion testimony was speculative, improper for a lay witness, and the product of several lines of leading questions from the prosecutor.

{¶34} However, "this Court has consistently held that 'trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel.'" *State v. Bradford*, 9th Dist. Summit No. 22441, 2005–Ohio–5804, ¶ 27, quoting *State v. Taylor*, 9th Dist. Lorain No. 01CA007945, 2002–Ohio–6992, ¶ 76. Viewing Lt. Hughes' purportedly improper testimony in the aggregate, we conclude that Carter has failed to meet his

burden of demonstrating that such testimony was actually prejudicial to his defense. Assuming without deciding that Lt. Hughes' testimony was improper, we cannot say that there was a reasonable probability that the results of Carter's trial would have been different but for trial counsel's failure to object to this testimony, especially considering the fact that four different witnesses identified Carter as the "drive-by" shooter on the night in question. *See State v. Russell*, 10th Dist. Franklin No. 03AP-666, 2004-Ohio-2501, ¶ 52 (finding that even if trial counsel's failure to object to opinion testimony was not justified on tactical grounds, appellant was not prejudiced since "there is no reasonable probability that, but for the failure to object, the results of the proceeding would have been different."). Accordingly, we determine that Carter's second assignment of error is without merit.

**{¶35}** Turning to his third assignment of error, Carter contends that his trial counsel was ineffective by failing to cross-examine Dana W. on his prior criminal convictions and his plea deal[2] with the State in exchange for his testimony in the present case. Moreover, Carter argues that his trial counsel was ineffective by not cross-examining Tracy W., Taresa Lynn W., and Dominique W., or otherwise objecting to or seeking a curative instruction in response to their purportedly improper testimony. Specifically, Carter argues that his trial counsel should have objected when Tracy W. and Taresa Lynn W. identified him as the shooter, since neither witness testified to seeing him driving the red truck or firing a gun on the night in question. Moreover, Carter argues that much of the W. family's respective testimony was either hearsay or the product of leading questions from the prosecutor.

---

[2] The record reflects that Dana W. was criminally charged for allegedly shooting a firearm at Carter two days before the night at issue in this matter. The record further reflects that the State offered Dana W. a plea deal of six years' incarceration in exchange for his testimony against Carter, but that Dana W. rejected this offer. Although Dana W. testified against Carter at trial, he testified that he rejected the State's plea offer because he was innocent of the charged offenses.

**{¶36}** Several courts have held that "decisions regarding cross-examination are within trial counsel's discretion and generally do not form the basis for a claim of ineffective assistance of counsel." *State v. Harris*, 10th Dist. Franklin Nos. 09AP–578, 09AP-579, 2010–Ohio–1688, ¶ 28, citing *State v. Flors*, 38 Ohio App.3d 133, 139 (8th Dist.1987) and *State v. Woods*, 4th Dist. Ross No. 09CA3090, 2009-Ohio-6169, ¶ 25. Moreover, "[i]t is well settled that 'trial counsel's failure to make objections are "within the realm of trial tactics" and do not establish ineffective assistance of counsel.'" *State v. Cureton*, 9th Dist. Medina No. 01CA3219-M, 2002-Ohio-5547, ¶ 55, quoting *State v. McCroskey*, 9th Dist. Wayne No. 96CA0026, 1997 Ohio App. LEXIS 1276, *12 (Apr. 2, 1997), quoting *State v. Hunt*, 20 Ohio App.3d 310, 311 (9th Dist.1984).

**{¶37}** Additionally, as noted earlier, Carter has failed to demonstrate a reasonable probability that the result of his trial would have been different absent the alleged deficiencies by his trial counsel. While shedding light on Dana W.'s prior criminal history and plea deal with the State may have caused the jury to doubt his credibility, there was testimony from four other witnesses positively identifying Carter as the "drive-by" shooter who killed the victim on the night in question. *See State v. Griffin*, 10th Dist. Franklin No. 10AP-902, 2011-Ohio-4250, ¶ 45 (holding that appellant failed to show he was prejudiced by trial counsel's failure to impeach the victim's credibility through evidence of a prior conviction since independent evidence existed tending to establish the appellant's guilt). Moreover, assuming without deciding that Tracy W.'s and Taresa Lynn W.'s testimony identifying Carter as the shooter was either improper or the product of improper questioning, we cannot ignore the fact that two disinterested witnesses, Theresa T. and Cheryl D., also identified Carter at trial as the "drive-by" shooter. Accordingly, based on the foregoing, we conclude that Carter has failed to establish that he was prejudiced by his trial counsel's performance.

**{¶38}** Finally, Carter briefly argues that his trial counsel was ineffective by advancing a theory of the case during his opening statement without presenting an expert witness at trial to buttress that theory. Specifically, Carter argues that his trial counsel was ineffective for arguing during his opening statement that Dana W. was the individual responsible for shooting and killing the victim without further developing this theory either on cross-examination of the medical examiner or through direct examination of an expert witness. However, on this point, we note that Carter has only made a very general, undeveloped argument in his brief. As this Court has repeatedly recognized, "[s]peculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel." *State v. Buzek*, 9th Dist. Medina No. 14CA0011–M, 2015–Ohio–4416, ¶ 7, quoting *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013–Ohio–3072, ¶ 4. Carter has made no attempt to explain why his trial counsel's failure to buttress his opening argument with expert testimony is tantamount to ineffective legal representation and this Court declines to construct such an argument on Carter's behalf. *See id.*; *Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out."). Accordingly, we likewise conclude that Carter's third assignment of error is without merit.

**{¶39}** Carter's second and third assignments of error are overruled.

### III.

**{¶40}** With all four of Carter's assignments of error having been overruled, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CALLAHAN, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.