[Cite as *Euclid v. Washington*, 2026-Ohio-2081.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

CITY OF EUCLID,                                       :

    Plaintiff-Appellee,                       :

                                               No. 115509

    v.                                                       :

DATONE WASHINGTON, SR.,                    :

    Defendant-Appellant.                    :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED.
**RELEASED AND JOURNALIZED:** June 4, 2026

Criminal Appeal from the Euclid Municipal Court
Case No. 25 CRB 00399

***Appearances:***

Mary Riley Casa, City of Euclid Prosecuting Attorney, and Ashley M. Garrett, Assistant Prosecuting Attorney, *for appellee.*

Michael P. Dunham, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant Datone Washington, Sr. ("Washington") appeals his conviction and sentence. He claims the following errors:

> 1. The trial court erred in accepting Mr. Washington's no-contest plea, finding him guilty, and denying his motion to withdraw his plea

because his plea was not made in a knowing, intelligent, and voluntary manner in violation of his rights to due process of law and a fair trial.

2. The trial court erred in sentencing Mr. Washington to a suspended jail sentence and probation, requiring him to do an anger-management class, a mental-health assessment, and barring him the use of alcohol, marijuana, and leaving the state while on probation in violation of his right to be free from cruel and unusual punishment.

3. Mr. Washington was denied his right to effective assistance of counsel.

{¶ 2} We find that Washington entered his no-contest plea knowingly, intelligently, and voluntarily because the trial court conducted a comprehensive colloquy wherein it explained to Washington the effect of his no-contest plea and the potential penalties he could receive. We, therefore, find that Washington's trial counsel was not ineffective, and we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} In April 2025, Washington was charged in the Euclid Municipal Court with one count of criminal damaging in violation of R.C. 2909.06(A)(1), a second-degree misdemeanor. A police report of the incident giving rise to the charge alleged that Washington became angry because he had to wait too long for food at a Wendy's fast-food restaurant and the employees refused him service. Washington responded by grabbing a clear acrylic cookie case and throwing it across the store, causing it to shatter. The incident was recorded on a surveillance camera in the store.

{¶ 4} In May 2025, Washington appeared in court for arraignment. He pleaded not guilty, and the court appointed counsel to represent him. In June 2025,

Washington appeared in court with counsel and pleaded no contest to the sole count of criminal damaging.

{¶ 5} Following a recitation of the facts, the court found him guilty. At a subsequent sentencing hearing, the court sentenced Washington to 90 days in jail, all of which were suspended provided that he (1) complete one year of community-control sanctions, (2) attend an anger-management program, (3) undergo a mental-health assessment, (4) consume no alcohol, drugs, or marijuana, (5) pay restitution to Wendy's in the amount of $251.71, and (6) stay off the Wendy's premises.

{¶ 6} Approximately two weeks later, Washington filed a motion to withdraw his no-contest plea wherein he admitted that he committed the act of criminal damaging and that he compensated Wendy's for the damage, but he claimed the court was biased against him.

{¶ 7} The trial court denied the motion. In its judgment entry, the court stated, in relevant part:

> At sentencing, the Court dismissed Defendant's claim that he was provoked by the Wendy's employee's disrespectful comments regarding Defendant's child. The Court expressed that Defendant's recourse regarding the disrespectful employee was to leave the restaurant and to complain to the owner — not to hurl a cookie dispenser. The Court reviewed Defendant's criminal history and suggested that counseling might be beneficial in helping Defendant to avoid being "provoked." A review of Defendant's criminal history revealed multiple convictions for offenses of violence. Despite Defendant's criminal history, Defendant was sentenced to a term of community control, ordered to undergo a mental health assessment and to comply with all treatment recommendations, to pay restitution and to stay off the premises to the Wendy's restaurant.

Defendant has failed to demonstrate any "manifest injustice." As such, Defendant's Motion to Withdrawal No Contest Plea is denied.

{¶ 8} This appeal followed.

## II. Law and Analysis

### A. No-Contest Plea

{¶ 9} In the first assignment of error, Washington argues the trial court erred in denying his motion to withdraw his no-contest plea. He contends his no-contest plea was not knowingly, intelligently, and voluntarily made because he thought he would receive a fine rather than being placed on probation.

{¶ 10} A trial court's obligations in accepting a guilty or no-contest plea depends on the level of the offense to which the defendant is pleading. *N. Royalton v. Semenchuk*, 2010-Ohio-6197, ¶ 7 (8th Dist.), citing *State v. Watkins*, 2003-Ohio-2419, ¶ 25. Washington was charged with a second-degree misdemeanor, punishable by up to 90 days in jail. Misdemeanors having penalties of six months or less are considered "petty offenses." Crim.R. 2(D). Crim. R. 11(E) governs plea hearings of petty offenses. We, therefore, review the plea hearing to determine whether the trial court complied with the requirements provided in Crim.R. 11(E) when it accepted Washington's plea. *Cleveland v. Jones*, 2023-Ohio-3474, ¶ 9 (8th Dist.) (holding that Crim.R. 11(E) applies to plea hearings of petty offenses).

{¶ 11} In reviewing the plea hearing, we apply a de novo standard of review to determine whether the trial court complied with Crim.R. 11(E) when it accepted Washington's no-contest plea. *State v. Meadows*, 2022-Ohio-4513, ¶ 18 (8th Dist.),

citing *State v. Cardwell*, 2009-Ohio-6827, ¶ 26 (8th Dist.). In a de novo review, we afford no deference to the trial court's decision. *State v. Buehner*, 2021-Ohio-4435, ¶ 43 (8th Dist.).

{¶ 12} Crim.R. 11(E), provides, in relevant part:

> In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty.

{¶ 13} Thus, in accepting a guilty or no-contest plea to a petty offense, a trial court is only required to advise the defendant, either orally or in writing, of the effect of the specific plea being entered. *State v. Jones*, 2007-Ohio-6093, paragraph one of the syllabus, and ¶ 23; *Cleveland v. Edwards*, 2018-Ohio-583, ¶ 9 (8th Dist.) (In accepting a plea to a petty offense, all the court must do is explain the effect of the plea being entered.).

{¶ 14} Crim.R. 11(E) does not require the court to advise a defendant of the constitutional and nonconstitutional rights listed in Crim.R. 11(C). *State v. Scott*, 2025-Ohio-1244, ¶ 21 (4th Dist.), quoting *State v. Greene*, 2024-Ohio-4899, ¶ 4 (8th Dist.) ("Crim.R. 11(E) also does *not require* a court to inform the defendant of 'the maximum penalty, the right to a jury trial, or other rights.'").

{¶ 15} A trial court informs the defendant of "the effect of the plea" by advising the defendant of "the appropriate language under Crim.R. 11(B)." *Jones*, 2023-Ohio-3474, at ¶ 9 (8th Dist.). With respect to the effect of a no-contest plea, Crim.R. 11(B)(2) provides:

The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.

{¶ 16} In *State v. Dangler*, 2020-Ohio-2765, the Ohio Supreme Court reviewed a no-contest plea to a felony, and it identified the following questions to be asked when reviewing a trial court's Crim.R. 11(C) colloquy:

(1) has the trial court complied with the relevant provision of the rule?

(2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and

(3) if a showing of prejudice is required, has the defendant met that burden?

*Id.* at ¶ 17. Although *Dangler* was decided in the felony context, Ohio courts have applied its "complete failure" exception to petty-offense pleas under Crim.R. 11(E). In *Lakewood v. Hoctor*, 2023-Ohio-375 (8th Dist.), this court held that when a trial court completely fails to mention the effect of a no-contest plea to a petty-misdemeanor offense, a prejudice analysis is not required, and the plea must be vacated. *Id.* at ¶ 7. *See also State v. Huffman*, 2024-Ohio-5273, ¶ 14 (5th Dist.), citing *Cleveland v. Byers*, 2023-Ohio-4542 (8th Dist.); *State v. Jackson*, 2022-Ohio-3662 (2d Dist.); *State v. Brown*, 2021-Ohio-3443 (9th Dist.) (expressly joining other districts in applying *Dangler*'s admonition that a complete failure to comply with Crim.R. 11 does not require a prejudice analysis to petty misdemeanor offenses).

{¶ 17} During the plea hearing, the trial court explained to Washington the effect of his no-contest plea. The court stated, in relevant part:

> THE COURT: You understand, sir, that by entering that plea of no contest, that is a complete admission as to the truth of the facts alleged in the charging document, but it is not an admission of your guilt?
>
> MR. WASHINGTON: Yes, sir.

(Tr. 4.) This advisement complies with the requirements of Crim.R. 11(E) and Crim.R. 11(B)(2). However, the court further advised Washington:

> THE COURT: Mr. Washington, once again, you understand that the offense of criminal damaging is a misdemeanor of the second degree, punishable by a fine to include $750 and up to 90 days in jail. You understand that, sir?
>
> MR. WASHINTON: Yes, sir.
>
> . . .
>
> THE COURT: You understand that a plea of no contest cannot be used against you in any subsequent civil or criminal proceeding?
>
> MR. WASHINGTON: Yes, sir.

(Tr. 4.) Thus, the trial court not only complied with all the requirements for accepting a no-contest plea to a petty offense as provided in Crim.R. 11(E), it also informed Washington of potential penalties associated with the criminal-damaging charge. Thereafter, the trial court explained each of the constitutional rights, such as the presumption of innocence, the right to remain silent, and the right of confrontation, that Washington was waiving by virtue of his guilty plea. (Tr. 5-7.) And, Washington, who was represented by counsel, indicated that he understood the waiver of each of these rights. (Tr. 6.)

{¶ 18} In short, the record reflects that the trial court conducted a comprehensive colloquy that addressed all the requirements of Crim.R. 11(E) as well as Washington's constitutional and nonconstitutional rights, including being informed of potential penalties beyond a mere fine. The fact that Washington now claims he was misled into believing he would be sentenced to a fine rather than placed on probation is belied by the record. The court never stated, much less promised, that Washington would only be sentenced to a fine.

{¶ 19} The first assignment of error is overruled.

## B. Cruel and Unusual Punishment

{¶ 20} In the second assignment of error, Washington argues his suspended jail sentence coupled with the terms of his probation that prohibit him from leaving the state, prohibit him from using marijuana or alcohol, and requiring him to complete an anger-management class and a mental-health assessment constitute cruel and unusual punishment.

{¶ 21} The Eighth Amendment to the United States Constitution and the Ohio Constitution art. I, § 9, each provide: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

{¶ 22} The Eighth Amendment prohibits punishment which is grossly disproportionate to the seriousness of the crime. *Ingraham v. Wright*, 430 U.S. 651, 667 (1977). Hence, a sentence does not violate constitutional prohibitions of cruel and unusual punishment unless it involves torture or other barbarous punishments

or the sentence is so disproportionate to the offense as to shock the moral sense of the community. *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69 (1964).

{¶ 23} Trial courts have broad discretion when sentencing a defendant on a misdemeanor conviction. *Cleveland v. Boyd*, 2023-Ohio-459, ¶ 9 (8th Dist.). We, therefore, will not disturb the trial court's sentence absent an abuse of discretion. *Id.* An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 24} A trial court is authorized to impose a sentence of community-control sanctions on misdemeanor convictions pursuant to R.C. 2929.27(A). R.C. 2929.27(C) instructs that in addition to the sanctions listed in R.C. 2929.27(A), a court "may impose any other sanction that is intended to discourage the offender . . . from committing a similar offense if the sanction is reasonably related to the overriding purposes and principles of misdemeanor sentencing." The overriding purposes of misdemeanor sentencing are "'to protect the public from future crime by the offender and others and to punish the offender.'" *Lakewood v. Dobra*, 2018-Ohio-960, ¶ 9 (8th Dist.), quoting R.C. 2929.21.

{¶ 25} R.C. 2929.22(B) enumerates factors the trial court must consider in misdemeanor sentencing, and failure to consider these factors constitutes an abuse of discretion. *Id.* at ¶ 9-10, citing *Maple Hts. v. Sweeney*, 2005-Ohio-2820, ¶ 7 (8th Dist.). Nevertheless, "the trial court is not required to make factual findings on the record related to these factors." *Dobra* at ¶ 10, citing *Sweeney* at ¶ 7. So long as the

misdemeanor sentence is within the statutory limits, the trial court is presumed to have considered the required factors enumerated in R.C. 2929.22 absent a showing to the contrary by the defendant. *Dobra* at ¶ 10., citing *Sweeney* at ¶ 7.

{¶ 26} R.C. 2929.24(A)(2) governs jail terms for misdemeanor convictions and provides the maximum jail term for a second-degree misdemeanor is 90 days. R.C. 2929.25(A)(2) governs community-control sanctions and provides that a term of community control "shall not exceed five years." And R.C. 2929.28(A)(2)(a)(ii) governs financial sanctions and provides that the fine for a second-degree misdemeanor shall not exceed $750. Therefore, Washington's suspended 90-day jail sentence, one year of community control, and fine of $750 are within the statutory ranges for these penalties, and they are not contrary to law.

{¶ 27} Washington nevertheless argues the terms of his community-control sanctions requiring him to complete an anger-management program and a mental-health assessment and prohibiting him from traveling outside Ohio and from using marijuana or alcohol constitute an abuse of discretion because they are not reasonably related to his criminal-damaging conviction.

{¶ 28} Community-control conditions must be reasonably related to the goals of community control, namely "'rehabilitation, administering justice, and ensuring good behavior.'" *State v. Mahon*, 2018-Ohio-295, ¶ 7 (8th Dist.), quoting *State v. Talty*, 2004-Ohio-4888, ¶ 16.

{¶ 29} In *State v. Jones*, 49 Ohio St.3d 51, 53 (1990), the Ohio Supreme Court held that in determining whether community-control conditions reasonably relate

to these goals, courts should consider whether the condition is (1) reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct that is criminal or reasonably related to future criminality and serves the statutory ends of probation. "All three prongs of the *Jones* test must be satisfied for the reviewing court to find that the trial court did not abuse its discretion." *Mahon* at ¶ 8, citing *State v. White*, 2015-Ohio-3844, ¶ 10 (10th Dist.). Furthermore, the conditions "'cannot be overly broad so as to unnecessarily impinge upon the [offender's] liberty.'" *Talty* at ¶ 13, quoting *Jones* at 52.

{¶ 30} The Ohio General Assembly revised the misdemeanor-sentencing statutes after *Jones* was decided and enumerated a list of residential, nonresidential, and financial sanctions that courts may impose. *State v. Ballish*, 2026-Ohio-503, ¶ 15. In *Ballish*, the Court held that the *Jones* test does not apply to these statutorily-enumerated conditions. *Id.* at ¶ 24. An appellate court must instead review the imposition of these statutorily-enumerated conditions for an abuse of discretion, keeping in mind that the sanctions must be "'[i]n the interests of doing justice, rehabilitating the offender, and ensuring the offender's good behavior.'" *Id.* at ¶ 15, quoting R.C. 2929.15(C)(2).

{¶ 31} R.C. 2929.27(A)(8) specifically authorizes the imposition of drug and alcohol conditions. *Ballish* at ¶ 25, citing R.C. 2929.27(A)(8). Under R.C. 2929.27(A)(11), a court may also require education and training, such as an anger-management program. These conditions and the mental-health assessment

are obviously intended to contribute to Washington's rehabilitation because they facilitate mental-health treatment and because they are, "by their very nature," designed for rehabilitation. *Boyd*, 2023-Ohio-459, at ¶ 16 (8th Dist.). These conditions also promote self-control, which was lacking when Washington threw the cookie case in anger. We, therefore, find that these conditions were appropriate and were not an abuse of discretion.

{¶ 32} Finally, the court did not impose a travel ban. At the conclusion of the sentencing hearing, Washington asked the court if the community-control sanctions would prevent him from relocating out of state. In response, the court informed him that he could file a motion to relocate out of state. Therefore, Washington's claim that the court imposed a one-year travel ban is not supported by the record.

The second assignment of error is overruled.

## C. Ineffective Assistance of Counsel

{¶ 33} In the third assignment of error, Washington argues his Sixth Amendment right to the effective assistance of counsel was violated.

{¶ 34} To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Defense counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness. *Id.* at 688. To establish prejudice, the defendant must

demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

{¶ 35} A reviewing court "'need not address both prongs of *Strickland* if an appellant fails to prove either prong.'" *Cleveland v. Brown*, 2026-Ohio-1046, ¶ 35 (8th Dist.), quoting *State v. Carter*, 2017-Ohio-8847, ¶ 27 (9th Dist.).  In applying the *Strickland* test, courts are always mindful that a properly licensed attorney is presumed competent and that trial counsel must be afforded deference regarding trial strategy.  *Id*., citing *In re Roque*, 2006-Ohio-7007, ¶ 11 (11th Dist.).

{¶ 36} Washington argues his trial counsel was ineffective because he (1) failed to inform him that he could be placed on probation prior to proffering his no-contest plea, (2) failed to explain the difference between a no-contest plea and sentencing, (3) failed to file a motion to withdraw his guilty plea prior to sentencing, and (4) failed to request new counsel so that the issue of ineffective assistance of counsel could be raised in his postsentence motion to withdraw his plea.

{¶ 37} However, as discussed in the first assignment of error, the trial court explained potential penalties he could receive by virtue of his no-contest plea.  The court also explained the effect of his no-contest plea.  The effect of the no-contest plea and the potential penalties were explained as two distinct concepts, and Washington indicated that he understood these things.

{¶ 38} Moreover, even if his trial counsel or some other attorney had filed a presentence motion to withdraw his guilty plea, it would have been denied because the trial court conducted a complete colloquy, and Washington clearly understood

the effect of his plea, the potential penalties, and the rights he was waiving by pleading guilty. Therefore, there is nothing to suggest that the performance of Washington's trial counsel was deficient or that he was prejudiced by counsel's performance.

**{¶ 39}** The third assignment of error is overruled.

**{¶ 40}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
DEENA R. CALABRESE, J., CONCUR